# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROL WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 2:17-cv-02087-JEO |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Carol West appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act. ("the Act"). (Doc. 1).[1] West timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). West has also filed a motion seeking an order of remand pursuant to 42 U.S.C. § 405(g). (Doc. 18). For the reasons discussed below, West's motion

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

to remand is due to be denied and the Commissioner's decision is due to be affirmed.[2]

## I. Procedural History

West was forty-four years old as of the date of her current application for DIB. (R. 319).[3] Her past work history includes bookkeeping, as an administrative assistant, and as a foster parent. (R. 38). She alleges she became disabled on November 1, 2013. (R. 319). She claims she could no longer work due to a variety of issues, including fibromyalgia, irritable bowel syndrome, arthritis, back pain, two bulging discs, and bone spurs. (R. 341). After her claims were denied, she requested a hearing before an ALJ. (R. 269). Following the hearing, the ALJ denied her claim on October 26, 2016. (R. 18-40).

Following the ruling, she appealed the decision to the Appeals Council ("AC"). As a part of the appeal, she submitted additional medical records in support of her claim. (R. 2). After reviewing the records, the AC declined to further review the ALJ's decision. (R. 1-4). That decision became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

---

[2] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

[3] References herein to "R. __" are to the administrative record found at Docs. 5-1 through 5-19 in the court's record.

West initiated this action on December 13, 2017. (Doc. 1). Nine months later, she filed her motion to remand. (Doc. 18).

## II. Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined West has not engaged in substantial gainful activity since November 1, 2013. (R. 21).

_____

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment "results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.* An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[5] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also*

---

[5] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

20 C.F.R. § 404.1521. A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined West has the following severe impairments: cervical disc disease; lumbosacral disc disease; psoriatic arthritis/ rheumatoid arthritis; fibromyalgia, migraine headaches; and irritable bowel syndrome. (R. 21). The ALJ specifically excluded the following medically determinable impairments because he found none of them causes more than minimal functional limitations or lasted for more than 12 continuous months: pneumonia, sepsis, acute respiratory failure, adult respiratory distress syndrome, hypoxia, dyspnea, leukocytosis, dyshidrotic eczema, hand dermatitis, sinusitis, influenza B, chest pain, an ingrown nail, restless leg syndrome, carpal tunnel syndrome, menorrhagia, right hand trigger ring finger, and being overweight. (R. 26-28).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of

the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26.  The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  20 C.F.R § 404.1520(a)(4)(iii) and (d).  At the third step, the ALJ determined Ms. West did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings.  (R. 28-31).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545.  A claimant's RFC is the most she can do despite his impairment.  *See id.* at § 404.1545(a)(1).  At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* § 404.1560(b)(1).  The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant is capable of performing

her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined West has the RFC to perform a limited range of light work. (R. at 31-38). More specifically, the ALJ found West had the following limitations to light work, as defined in 20 C.F.R. § 416.967(b):

> no driving, no climbing, and no work at unprotected heights or operation of hazardous machinery. She can do no more than occasional stooping and crouching. She can do no upper extremity pushing and/or pulling or overhead reaching. She is limited to simple, repetitive, noncomplex tasks.

(*Id.* at 31). At the fourth step, the ALJ determined West would not be able to perform her past relevant work as a foster parent, bookkeeper, administrative assistant, or account specialist. (*Id.* at 38).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of

performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering West's age, education, work experience, and RFC, the ALJ determined she can perform jobs that exist in significant numbers in the national economy, such as those of cleaner, labeler, and packager or hand packer. (R. 39). Therefore, the ALJ concluded West has not been under a disability as defined by the Act since November 1, 2013, through the date of the decision. (R. 40).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

There are two matters before the court: (1) West's motion seeking a remand order pursuant to sentence six of 42 U.S.C. § 405(g) and (2) her appeal of the administrative determination. In her brief on the merits of her claims, she asserts the following issues: (1) substantial evidence does not support the ALJ's decision to reject the medical opinions regarding what she could do despite her psoriatic arthritis and the nature and severity of the same; (2) the AC erred in failing to remand this matter to the ALJ to consider her newly submitted evidence; and (3)

the ALJ's determination concerning her subjective symptoms is not based on substantial evidence. (Doc. 12 at 1).

**A. Medical History and Evidence**

West's relevant medical history is substantial. It is also necessary to repeat much of it to adequately address the issues raised by her. The court will begin with the oldest relevant matter first.

### 1. Drs. William Craig, Charlie Talbert, and Mark Downey

West initially sought treatment for neck, low back, and pelvic pain from Dr. William Craig on March 29, 2013. (R. 649). She complained that her pain restricted her physical activity and disrupted her sleep. (*Id.*). She reported a subjective pain score ("SPS") of 5 out of 10. (*Id.*). Dr. Craig's physical examination found antalgic gait and tenderness in her greater trochanter and buttock. (R. 651). Dr. Craig administered a guided trochanteral bursal injection.[6] (R. 652).

West had another pain block on May 2, 2013, due to low back pain. (R. 641). She returned to Dr. Craig on May 21, 2013, complaining of severe, sharp, aching pain in her low back after she bent over to pick up her grandson when she felt a pop in her back. (R. 645). Dr. Craig's physical examination found a positive

---

[6] The medical records reveal that West had another block on March 14, 2013. She stated that her pain was better after the block. (R. 649).

left straight leg raising test and hip tenderness. (R. 647). He administered a trigger point injection, adjusted her medications, and prescribed a back brace. (R. 648).

West returned to see Dr. Craig on July 25, 2013, with a SPS of 5 out of 10. (R. 641). She reported that her pain after the May 2, 2013 pain block was about the same after the block as it was before the block. (*Id*.). Dr. Craig administered a venipuncture injection and prescribed a Medrol dose pack, Flexeril, and Norco. (R. 643).

Ms. West returned to Dr. Craig on August 9, 2013, with a SPS of 5 out of 10. (R. 637). Dr. Craig administered a medial branch block injection and prescribed a short term dosage of Dilaudid. (R. 640).

On February 26, 2014, Ms. West's low back pain was treated by Dr. Craig with a L5-S1 facet injection. (R. 600). Her SPS score was 5/10. She stated her pain worsened after her hospitalization for Acute Respiratory Distress Syndrome in November 2013. (R. 459-573, 600).

A March 14, 2014 lumbar MRI scan found a disc protrusion on L5-S1 which extended more to the left side. (R. 657). The report indicates that the disc height had not changed during the last two years. (*Id*.). Dr. Craig increased her Lyrica dosage on March 21, 2014. (R. 583). On March 31, 2014, Dr. Craig treated her lumbar radiculopathy and lumbar facet arthropathy with a left L5-S1 lumbar inter laminar epidural steroid injection. (R. 595). She reported her SPS was 7 out of 10

on April 21, 2014. Dr. Craig noted her radicular back and leg pain were responding to therapies, medication and steroid injections. (R. 636). Dr. Craig opined that 60% of her symptoms were from her back and 40% were from her legs. He referred her to Dr. Charlie Talbert for a surgical evaluation. (*Id*.).

Dr. Talbert evaluated West on April 24, 2014. His review of her lumbar MRI found disc degeneration at L5-S1, bulging at L4-5 and L3-4, and a left sided foraminal bulge. The bulge did not appear to put pressure on the number five root. (R. 632). His physical examination revealed West had good strength and a negative straight leg raise. (R. 633). Dr. Talbert sent her for a nerve test and suggested that she not have surgery. (R. 632). He stated in his notes, "She has a problem but we do not have a good fix." (*Id*.).

On August 27, 2014, Dr. Mark Downey administered a right L5-S1 transforaminal epidural steroid injection under fluoroscopy. (R. 825). West returned to Dr. Downey on October 29, 2014, with SPS pain score of 8/10. (R. 930). She described having severe and functionally limiting pain. Dr. Downey administered a second right L5-S1 transforaminal epidural steroid injection under fluoroscopy. (*Id*.). She returned to see Dr. Downey on January 21, 2015. (R. 935). She described having 100% pain relief for two months. (*Id*.). Dr. Downey administered a third right L5-S1 transforaminal epidural steroid injection that day. (*Id*.).

## 2. Dr. Jeffrey D. Wade

West also was evaluated by Dr. Jeffrey D. Wade, an orthopedic surgeon, on May 13, 2014. (R. 669). His physical examination of West found a positive left straight leg raising test with numbness and tingling in her left foot and weakness in her L5 nerve root. (*Id*.). He determined that her March 2014 MRI scan showed a degenerative disc at L5-S1 with a broad based disc bulge into left foramen, causing foraminal stenosis. (*Id*.). Dr. Wade told her that he could perform a laminectomy discectomy at L5-S1 with foraminotomy. (*Id*.). He did not recommend a fusion. (*Id*.). West decided to have the operation. Dr. Wade performed bilateral L5 laminectomies, medial facetectomies removing the central paracentral disk herniation, and a partial S1 laminectomy with the removal of a inferiorly migrated free fragment on May 16, 2014. (R. 683). Shortly after the surgery, West developed a subcutaneous infection that required irrigation and debridement on May 25, 2014. (R. 677).

West saw Dr. Wade on December 2, 2014, complaining of lower back pain and bilateral leg numbness. (R. 931). Dr. Wade sent her for a lumbar MRI with contrast of her lower back. (*Id*.). Dr. Wade determined that her MRI showed mild to moderate left neural foraminal stenosis at L4-5 due to a bulging disc, posterior lateral spurring, and mild facet DJD. Additionally, a 7mm cyst was found at the

far lateral aspect of the neural foraminal, which permiter contained the L5 nerve root.  (R. 933).

West received an injection on January 12, 2015, to alleviate irritation of her facet joint.  (R. 932).  An April 27, 2015 MRI showed stable findings compared with her December 2014 MRI and that she likely had a synovid or perineurial cyst. (R. 937).

### 3.  Dr. Sean O'Malley

West began seeking Dr. Sean O'Malley in June 2015.  (R. 941). West complained of stabbing right shoulder pain and low back pain in her hips and legs with numbness and weakness. She had right carpal tunnel release surgery in October 2015 and L5-S1 disc fusion surgery in December 2015.  (R. 944, 950). Dr. O'Malley reported on January 8, 2016 that her back pain had improved substantially. By February 2016, her back pain resolved and she was walking regularly.  (R. 952, 1036).  Later that month, she did have to cut back on her walking due to pain. (R. 1036).  Specifically, she reported some pain in her hip at night, and some pain in her left leg and feet.  (*Id*.).  Dr. O'Malley noted that her gait and strength were good.  (*Id*.).

### 4.     Dr. Vicki L. Moore

West was seen by Dr. Vicki L. Moore for Fibromyalgia, headaches, low back pain, migraines, and rheumatoid arthritis.  (R. 990).  On July 1, 2013, she was

seen by Dr. Moore with complaints of pain in her lower left back and left forearm. X-rays disclosed narrowing of the C5-C6 disc space. (R. 713). She was prescribed rest, ice, and a Medrol dose pack (*Id*.). In December 2013, West returned to Dr. Moore after she fell. She complained of right hip pain.[7] (R. 706). She also told Dr. Moore that she could not return to work. (*Id*.). In February 2014, West complained to Dr. Moore about left arm numbness. (R.767, 775). Dr. Moore noted that West should increase her walking and physical activity. (R. 770).

During her annual physical in September 2014, Dr. Moore noted West's history of migraine headaches, fibromyalgia and RA. Dr. Moore stated that West did not have many migraines, but her fibromyalgia and RA limited her ability to exercise. (R. 827). Dr. Moore also noted that West's back pain had improved since her last epidural . (R. 831). During her October 2, 2014 visit for a hand rash, West reported that her new medication for the psoriatic arthritis had cleared up her hand rash better than any other medication but steroids. (R. 838). West also reported that overall she was "doing well" and had "no current complaints." (*Id*.). During her February 16, 2015 visit, she complained that her January 2015 block had not been effective as it had been in the past. (R. 990). She also told Dr. Moore that her May 2014 surgery helped until October 2014, but now her right buttock hurt all the time. (*Id*.).

---

[7] Ms. West was hospitalized on November 11, 2013, with respiratory distress. (R. 465).

### 5. Dr. Nop Unnoppet

West sought treatment from Dr. Nop Unnoppet beginning September 10, 2013. (R. 803). Her symptoms included persistent back pain, polyarthritis, skin lesions on her palms, and a positive HLA-B27[8] blood test. She described awakening each morning with stiffness in her back and pain in her hands. She stated that her skin lesions improved when she received lumbar epidural steroid injections. (*Id.*).

West returned to Dr. Unnoppet on October 11, 2013. (R. 699). At this point, she had skin lesions on her palms and in her hair and she was experiencing pain and swelling with both hands. (R. 699). Dr. Unnoppet ordered further blood testing and referred her to a dermatologist for examination. She also regularly saw Dr. Unnoppet during 2014 and 2015. West frequently presented with hand and scalp lesions, arthritis in her back, and complaints of pain or itching. (R. 790 (doing poorly), 797-99, 801, 892 (symptoms are moderate and occur daily), 894, 906, 1044, 1049, 1051 (moderate/daily occurrence)). Her August 2014 x-rays found no erosions, hypertropic changes, arthular cartilage loss, or soft tissue clarifications. (R. 901). By December 2014, she had moderate complaints of psoriatic arthritis. She was "happy with her therapy" for her arthritis. (R. 1043-45, 1058). She also

---

[8] "The presence of HLA-B27 is associated with several specific autoimmune conditions including ankylosing spondylitis, rheumatoid arthritis, psoriatic arthritis, undifferentiated oligoarthritis, uveitis, and inflammatory bowel disease. Although less than 10% of the population are carriers of HLA B-27, 20% of carriers will develop an autoimmune condition." https://medical-dictionary.thefreedictionary.com/Hla-b27+antigen (last visited March 12, 2019).

experienced 11 of 18 tender points consistent with fibromyalgia. (R. 1045). During 2014, her medications were adjusted as needed and she received various injections. (R. 797-99, 903, 1040, 1044).

During the first part of 2015, she continued to have psoriasis and diffuse pain. (R. 1046-47, 1049, 1051). Her medications were frequently changed for various reasons. (*Id*.). By the last quarter of 2015, her psoriasis cleared or was seen as being mild and her psoriatic arthritis had improved. (R. 1053, 1055 (normal), 1058-61 (controlled)).

During the first half of 2016, her visits to Dr. Unnoppet showed she was having arthritic symptoms in her right hand. She required injections in the impacted areas. (R. 1063,1066, 1068). In her August 2016 visit, she reported being very pleased with her treatment until a recent flare-up. (R. 168). She was treated with another Medrol dose pack because of her responsiveness to it. (*Id*.). She had a flare in her right thumb about two months later. (R. 174). Dr. Unnoppet injected the thumb with methylprednisone. (R. 175). She experienced another flare in her hands and feet in December 2016. (R.46). Some skin eruptions were noted. (*Id*.). Her examination revealed bilateral tenderness in her foot, ankle, and hands. (R. 49). While her psoriasis continued through her January 2017 visit, it was noted as improving. (R. 52, 55). She was also doing well on her arthritis medication. (*Id*.).

### 6. Drs. Cheryl Goyne and Ross A. Lumsden

West was referred by Dr. Unnoppet to Dr. Cheryl Goyne for pain management—principally leg pain beginning in May 2015. (R. 865-68). Dr. Goyne's physical examination revealed tenderness in West's spinous process, tandem Sl labored ambulation, abroad deep tendon reflexes and decreased pinprick sensation to hands. (R. 867). Her SPS was 5/10. Dr. Goyne suspected restless leg syndrome was causing her lower extremity symptoms. (*Id*.). Dr. Goyne treated her pain with medication. (R. 868). Dr. Goyne modified some of her medications and scheduled her for a nerve conduction study. The study showed moderate bilateral carpal tunnel syndrome and "compatible but not indicative active right C6 radiculopathy." (R. 870).

West returned to Dr. Goyne in June and August 2015, with SPS scores of 7/10. (R. 872, 879). Dr. Goyne again adjusted West's medication dosages. (R. 873, 881).

West saw Dr. Goyne on September 24, 2015. (R. 883). West stated that she was frustrated with her severe low back pain and that her leg pain was helped by having an epidural steroid injection. She reported an SPS score of 10/10. (R. 884). Dr. Goyne treated her with pain medications, referred her for physical therapy, and referred her to Dr. Wade to discuss possible surgery. (R. 885). On November 4, 2015, West reported continuing symptoms, including right anterior thigh pain. (R.

887). West was seen by Dr. Goyne in December 2015. Dr. Goyne noted that West "is an active busy mother, but she wants to start CrossFit again and thus is not satisfied with her level of activity." (R. 873).

She next saw Dr. Ross A. Lumsden on September 14, 2016. Her SPS score was 7/10. Dr. Lumsden's physical exam found limited ambulation and antalgic gait, positive right/straight leg raising abdominal sensation, bilateral hand tenderness. West filled out a pain and disability questionnaire and scored 101. Her physical function score was 56 and her psychosocial score was 42, which were indicative of severe limitations. (R.155-58). West returned to Dr. Goyne on September 27, 2016. (R. 148). Dr. Goyne prescribed Lidocaine patches and Lunesta. (R. 151-152). Her pain and disability questionnaire score had improved to 88 which indicated moderate limitations. (R. 152). West returned to Dr. Lumsden on October 19, 2016, and received a steroid injection. (R. 122, 142).

### 7. Consultative Examination by Dr. Danielle Powell

West was evaluated by Dr. Danielle Powell at the request of the Disability Determination Service on October 4, 2014. West's chief complaints were back pain, fibromyalgia and psoriatic arthritis. (R.844). Dr. Powell's physical examination noted that West had a macular papular scaly rash on her palms consistent with psoriatic arthritis; she had a normal gait stride; she was able to toe and heel walk, but did complain of pain; her Romberg test was negative; her

cervical and lumbar spine were both tender to palpation in the paraspinal muscles and she complained of pain with range of motion in both areas; her Spurling's maneuver and Saber's maneuver were negative; and her fine and gross manipulative activities of reaching overhead, reaching forward, handling, fingering, and feeling were occasionally secondary to psoriatic arthritis. Dr. Powell diagnosed West with mechanical low back pain secondary to an L5-S1 herniated disc that is post laminectomy, psoriatic arthritis, and fibromyalgia. Concerning West's functional abilities. Dr. Powell also determined West was limited to two hours standing and walking (secondary to pain) and she had no sitting limitation. She also concluded West could climb steps and stairs occasionally; she could not use ladders, scaffolds, and ropes; and she could occasionally (secondary to joint pain) stoop crouch, kneel and crawl. (R. 846-48).

### B. The ALJ's Decision to Reject the Medical Opinions

West initially argues that substantial evidence does not support the ALJ's decision to reject the medical opinions regarding what she could do despite her psoriatic arthritis and the nature and severity of the same. (Doc. 12 at 16-21). In support of this claim, she argues that the ALJ failed to (1) ask the VE to consider the effect of limitations of occasional reaching, handling and fingering on the availability of light and sedentary exertional jobs and (2) identify the reasons for rejecting the medical opinions. (*Id*.). The Commissioner responds that substantial

evidence supports the ALJ's weighing of the medical opinions in assessing West's RFC. (Doc. 15 at 5-13).

### 1. The Experts

Dr. Powell examined and completed a functional assessment of West on October 4, 2014. She found that West's "[f]ine and gross manipulative activities of reaching overhead, reaching forward, handling, fingering, and felling are occasionally secondary to psoriatic arthritis." (R. 848). Dr. Whitman, a non-examining, reviewing consultant opined on October 15, 2014, that West's limitations were as follows:

> Handling bilateral hands is occ[asional]; unable to hold large objects because of palm psoriasis; unable to push/pull except for brief periods; able to guide briefly; fingering frequently.

(R. 254). In his decision, the ALJ determined that West had the RFC

> to perform light work … except with no driving, no climbing and no work at unprotected heights or operation of hazardous machinery. She can do no more than occasional stopping and crouching. She can do no upper extremity pushing and/or pulling or overhead reaching. She is limited to simple, repetitive, non-complex tasks.

(R. 31). The ALJ discounted Dr. Powell's assessment, stating that it was "not entirely consistent with the claimant's treating medical records, or internally consistent." (R. 37). He then provided the example that Dr. Powell reported that [West] could only occasionally perform fine and gross manipulative activities

secondary to psoriatic arthritis, but she [(Powell)] indicated that the claimant's gross and fine motor skills examination was normal." (*Id.*).

In determining an individual's RFC, the ALJ must consider all the relevant evidence in the case record, including a claimant's medical history, the effects of treatment, daily activities, recorded observations, and any medical source statements. 20 C.F.R. § 404.1545; Social Security Ruling 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996). In evaluating medical opinions, the ALJ is to consider numerous factors, including whether the doctor examined or treated the individual, the evidence the doctor presents to support an opinion, and whether the doctor's opinion is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c). A treating source's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting such an opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinion of a non-treating source, however, is not entitled to any special consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (c)(2); *Crawford*, 363 F.3d at 1160.

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). However, an ALJ is not required to specifically address every aspect of an opinion. *See Adams v. Comm'r, Soc. Sec.*

*Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (citing *Dyer*, 395 F.3d at 1211). Additionally, an ALJ is not required to use particular phrases or formulations as long as the court can determine what statutory and regulatory requirements the ALJ applied. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987).

> Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart* [*v. Schweiker*], 662 F.2d [731,] 735 (11th Cir. 1981) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Wright v. Colvin*, 2016 WL 4083411, *2 (S.D. Ala. Aug. 1, 2016). In sum, the question for this court is the adequacy of the ALJ's explanation.

While the court finds that the ALJ's reasoning is minimal, it is adequate. This is not an instance were the ALJ was silent on the matter. The ALJ noted that Dr. Powell performed a consultative examination of West in October 2014 and opined West could occasionally perform the fine and gross manipulative activities of reaching overhead, reaching forward, handling, fingering, and feeling due to psoriatic arthritis. (R. 844-49). The ALJ gave Dr. Powell's opinions only some weight because they were inconsistent both internally and with other treatment records. (R. 37). *See* 20 C.F.R. § 404.1527(c)(3)-(4) (addressing supportability,

consistency).[9] The court finds that substantial evidence supports this conclusion. Although Dr. Powell opined West could only occasionally perform fine and gross manipulative activities, she also observed during her physical examination that West's gross and fine motor skills were normal on examination and she had 5/5 strength in all extremities and normal muscle bulk and tone. (R. 847). She also found that West had good motor strength and normal muscle bulk and tone. (*Id*.). Thus, the ALJ's decision to give her opinion limited weight because it was unsupported by her own examination supports the ALJ's decision.

Although not discussed in any detail by the ALJ in his analysis of Dr. Powell's findings, the opinion does show elsewhere that the medical records do, at least in part, support this determination. The ALJ notes that certain treatment records documented reports from West showing some improvement of her hand

_____

[9] Section 404.1527(c)(3)-(4) provides:

> (3) Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

> (4) Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

20 C.F.R. § 404.1527(c)(3)-(4).

condition with treatment. (*See* R. 23, 25, 27-29, 34-35). Additionally, the findings are supported by various medical records. (*See* R. 633-35 (Apr. 2014 – no lesions), 810-13 (Aug. 2014 – no lesions), 838-41 (Oct. 2014 – rash on palms almost gone), 844-48 (Oct. 2014 evaluation – overall normal, but scaly rash noted), 867 (no swelling in extremities – May 2015), 892 (condition was moderate – June 2014), 955-56 (June and Oct. 2015 – no lesions noted during carpal tunnel evaluation), 1035-36 (Jan. and Feb. 2016 – overall post-op evaluations were unremarkable), 1046-49 (Jan. 2015 – no lesions noted)[10], 1053-57 (Oct. 2015 – no lesions or scaling noted).[11] Additionally, her August 2014 hand x-rays were negative and her wrist x-rays showed no significant findings. (R. 23, 811-12). In October 2015, Dr. Moore noted Cimzia "has done a great job with [Plaintiff's] hands." (R. 1027). She also made no notations concerning West's skin during her physical examination. (R. 1030). Thus, the court finds that under the circumstances, the ALJ's decision to give Dr. Powell's opinion only some weight because of inconsistencies in her opinion and the other medical records is supported by substantial evidence.

West also argues that in affording little weight to the medical opinion of Dr. Whitman, the ALJ failed to state with the required particularity the reasons for

---

[10] Psoriasis was still noted on her palm. In January and April 2015. (R. 1049, 1051).

[11] The court recognizes that there were other examinations and reports of pain associated with lesions on her hands. (R. 789-92 (August 2014 – doing poorly and had lesions); 1042-44 (Dec. 2014 – lesions noted).

doing so. (Doc. 12 at 19). The Commissioner responds that the ALJ properly weighed the evidence. (Doc. 15 at 10).

As stated previously, Dr. Whitman evaluated West in October 2014. He determined that she could perform a range of sedentary work, she was unlimited in reaching in any direction and in feeling, she could occasionally handle and frequently finger, she was unable to hold large objects because of palmar psoriasis, and she was unable to push/pull except for brief periods. (R. 253-55). The ALJ gave his RFC opinions little weight because Dr. Whitman did not have access to all of the subsequently submitted medical records. (R. 38). In view of the subsequent medical evidence adduced between the evaluation and the ALJ's opinion (as discussed above), the court finds that the ALJ properly weighed Dr. Withman's opinions and his explanation was adequate under the circumstances.

Lastly, West argues that the ALJ improperly rejected Dr. Unnoppet's opinion. (Doc. 12 at 19-21). Dr. Unnoppet stated that West was "very hard to treat, her pathology has been recalcitrant to medications, when uncontrolled can cause her to have polyarthritis. We are continuing to treat her aggressively." (R. 1114). The ALJ rejected Dr. Unnoppet's medical source opinion because he did not report that she had disabling pain, disabling limitations or her condition was chronically uncontrolled. (R. 34). West asserts that Dr. Unnoppet's silence regarding her functional ability does not translate into an opinion that she can work. (Doc. 12 at

20). West further argues that "the ALJ improperly rejected all medical evidence of the nature and severity of Ms. West's psoriatic arthritis and her functional limitations for psoriatic arthritis." (*Id*.). Lastly, she argues that the ALJ did not pose a proper hypothetical with all her limitations to the VE. (*Id*.). Each will be addressed separately.

As to the first claim, although Dr. Unnoppet stated that West's condition had been hard to treat and it had not responded to medications, he did state he was treating her instead with biologic therapy.[12] Additionally, his opinion did not state that her condition was uncontrolled. Instead, he stated that when uncontrolled it could cause her to have polyarthritis. (R.1114). Finally, his opinion did not enumerate any functional limitations caused by her condition or treatment. (*Id*). Thus, the court cannot under the applicable standards find fault with the ALJ's decision.

West next argues that the ALJ improperly equated Dr. Unnoppet's silence regarding her functional ability into an opinion that she can work. (*See* Doc. 12 at 20). As part of this claim, West also asserts that the ALJ improperly rejected all of the medical evidence concerning her psoriatic arthritis and her limitations as a result of the disease. (*Id.*). It is the responsibility of the ALJ to determine a

---

[12] Biologics are a form of injection treatment for psoriatic arthritis that target specific parts of the immune system to block activity from T cells or certain proteins. Everyday Health, https://www.everydayhealth.com/psoriatic-arthritis/treatment/psoriatic-arthritis-biologics-questions-ask-your-doctor/ (last visited March 19, 2019). Biologics may be used if "first line therapies are ineffective. (*Id*.).

claimant's RFC and ability to work. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). That is exactly what the ALJ did in this case. His determination that Plaintiff could perform light work with limitations is supported by substantial evidence. While there is no question that the evidence shows that West experienced flare-ups in her hands due to the psoriasis and psoriatic arthritis, substantial evidence also supports the ALJ's determination.

The evidence supporting the ALJ's decision includes the following: Dr. Talbert observed in April 2014 that West had "good strength" and no rashes or lesions (R. 633-35); her negative August 2014 x-rays of her hands and wrists (R. 811-13); West's August 2014 function report that she helped her daughter get ready in the morning, did light housework and laundry, and prepared some meals (R. 356, 358, 360); West's description of her symptoms at times as "moderate" in 2014 and 2015 (R. 790 (Aug. 2014), 892 (Jun. 2014), 1043 (Dec. 2014), 1051 (Apr. 2015)); her October 2014 report to Dr. Moore that her medication for psoriatic arthritis had cleared up her hand rash better than anything other than steroids, and she was doing well with no current complaints (R. 838)[13]; Dr. Powell's October 2014 observations of normal gross and fine motor skills, 5/5 strength in all extremities, and normal muscle bulk and tone (R. 847-48); Dr.

---

[13] Dr. Moore also noted that West's usual scaly rash was "almost gone with just a slight bit of scale at present." (R. 840).

Unnoppet's January 2015 report that Plaintiff did "very well" with Toradol injections for diffuse pain (R. 1047); Dr. Goyne's May 2015 observation of decreased pin sensation in the right fingertips, but also normal motor strength, bulk, and tone (R. 867); Dr. O'Malley's June 2015 observation of only "somewhat" diminished sensation in the right hand, with 5/5 strength, no motor drift, and normal muscle tone and bulk (R. 955); West's June 2015 report to Dr. Goyne that she was "an active busy mother, but she wants to start CrossFit again and thus is not satisfied with her level of activity"[14] (R. 873); Dr. O'Malley's October 2015 observations of 5/5 strength and intact sensation (R. 956); West's October 2015 report of "mild" symptoms and being "very happy with" injection therapy for psoriatic arthritis (R. 1053); Dr. Goyne's notation that West had "good results" from right carpal tunnel release in October 2015 for her carpal tunnel syndrome (R. 889); and her January 2016 report she was "doing well" following back surgery (R. 1035); and Dr. O'Malley's observation that West had "good" strength in January and February 2016 (R. 1035-36). In view of this evidence the court must find that substantial evidence does support the ALJ's determination.

Finally, West argues that the ALJ did not pose a proper hypothetical with all her limitations to the VE. (Doc. 12 at 20). Specifically, she states that he did not

---

[14] CrossFit is a fitness regimen consisting of constantly varied high-intensity functional movements. *See* CrossFit, https://www.crossfit.com/what-is-crossfit (last visited March 19, 2019).

include any limitations for her psoriatic arthritis or any limitations concerning occasional handling and fingering as Dr. Powell determined. (*Id.*). The Commissioner counters that the ALJ's hypothetical incorporated all of the RFC findings. (Doc. 15 at 5 (citing R. 220-22)). While it is a close question, the court agrees with the Commissioner. The hypothetical posed to the VE was adequate in view of the fact that Dr. Powell's opinion concerning "fine and gross manipulative activities" is of limited value under the circumstances as just discussed. (R. 848). Accordingly, the court finds that the hypothetical did incorporate the requisite RFC findings.

## C. Substantial Evidence Does Not Support the ALJ's Determination

West next asserts that the ALJ incorrectly determined that Dr. Goyne's medical records do not indicate disabling pain or limitations for a period of twelve continuous months. (Doc. 12 at 24-29). The Commissioner responds that the ALJ's subjective complaint analysis is supported by substantial evidence. (Doc. 15 at 13-18).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the **claimant must satisfy two parts** of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt*

> *v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ
> discredits subjective testimony, he must articulate explicit and
> adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007,
> 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting
> subjective testimony requires, as a matter of law, that the testimony be
> accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th
> Cir. 1988).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (bold added); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. § 404.1529(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A

clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that West's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (R. 32-33). He also found that her allegations of disabling pain and limitations, were "not consistent with her longitudinal treating medical records, which do not indicate any period of 12 continuous months during which [she] has been unable to perform work consistent with [her FRC]." (R. 33). As will be discussed in detail below, the court finds that the ALJ's determinations are supported by substantial evidence.

First, although West testified during her administrative hearing in August 2016 that she experienced extreme back pain and migraines (R. 191-92 & 194-95), she was able to work with back pain and migraines previously.[15] In April 2014, while seeing Dr. Craig about back issues, she informed him that she had been experiencing the symptoms for years and they were about the same as what she

_____

[15] West also told Dr. Moore in September 2014 that she "doesn't have very many migraines really. (R. 827). Dr. Goyne reported in May 2015 that West was satisfied with the Imitrex she was taking for her migraines, which were "well controlled." (R. 867).

was experiencing at that time, which she rated at 7/10.[16] (R. 634). Second, West evidenced good strength following her May 2014 and December 2015 surgeries. (*See* R. 633, 867, 955-56 & 1034-36). Third, following her May surgery, she reported to Dr. Wade that she was "doing well overall." (R. 667). She did not report any disabling pain or limitations. Fourth, following her December surgery, Dr. O'Malley noted that West stated that she was "doing well" and her back pain had "resolved."[17] (R. 1035). He further noted in February 2016 that her back was doing well; she had some pain, but she had been waling a lot and "she cut back a little bit;" and she had good strength and gait. (R. 1036). Fifth, during January 2015, Dr. Unnoppet noted that West stated that she was doing "very well" with her Toradol injections for her diffuse pain. (R. 1047). Sixth, during a May 2015 visit with Dr. Moore, West reported that she was doing "just fine on one Lortab daily" for her "all over" pain. (R. 1015). Seventh, during an October 2015 visit with Dr. Unnoppet, West stated that her symptoms were mild and she was very happy with the injection therapy she had received. (R. 1053). Eighth, in December 2015 Dr. Goyne noted that West "is an active busy mother, but she wants to start CrossFit again and thus is not satisfied with her level of activity." (R. 873).

---

[16] West's date of alleged disability was listed as November 1, 2013. (R. 18).

[17] West did complain of hip pain, however, she stated she had been walking a couple of miles a day. (R. 1035). Dr. O'Malley noted that her gait and strength were good. (*Id.*).

To the extent that West cites to Dr. Goyne's records showing pain levels of 5/10 to 10/10 at visits during May 2015 through November 2015 while she was on various medications, that does not necessarily demonstrate she was unable to work due to disabling pain or other limitations. (Doc. 12 at 27). The ALJ clearly considered Dr. Goyne's records in reaching his determination. The court notes that West's pain complaints during her September 24, 2015 and November 4, 2015 visits were 10/10 just before her surgery in December 2015. After that she reported in February 2016 that her back pain resolved and she was walking regularly. (R. 952, 1036).

To the extent West argues that the ALJ improperly interpreted the physicians' silence regarding her functional ability into a conclusion that she can work, the court is not impressed. The court sees this as an absence of evidence demonstrating that West had a disabling condition or combination of conditions that precluded her from working consistent with her RFC. The ALJ considered this lack of evidence along with the other evidence already discussed herein and concluded that West had the ability to work. As also stated already, there is substantial evidence, including her longitudinal medical history and her statements and actions (*e.g.*, wanting to return to CrossFit, walking, and ability to perform certain activities) that support the ALJ's determination. To the extent West's arguments suggest that this court should reweigh the evidence, that is not the role

of this court. *See Werner v. Comm'r Soc. Sec.*, 421 F. App'x 935, 937, n.1 (11th Cir. 2011) ("We do not 'decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

### D. The Appeals Council Erred in Failing to Remand Based on Her Newly Submitted Evidence

West next argues that the Appeal Council erred in failing to remand this case to the ALJ premised on the additional medical records from Dr. Unnoppet and Dr. Goyne that were submitted to it. (Doc. 12 at 21). The records include those of Dr. Unnoppet from August 18, 2016, through January 23, 2017, and those of Dr. Goyne from September 14, 2016, through January 26, 2017. (*Id.* (citing R. 46-60, 61-166, and 167-76)).[18] The Commissioner responds that the claim is without merit. (Doc. 15 at 18).

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.' " *Ingram v. Comm'r Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)). Evidence is new if it is not contained in the

---

[18] For clarity, the court notes that Dr. Unnoppet's records include are those from Southside Pain Specialists dated August 18, 2016 to October 19, 2016 and from Shelby Baptist Health Center dated August 22, 2016 to October 12, 2016 and Dr. Goyne's records include those from Southside Pain Specialists dated November 9, 2016 to January 26, 2017 and from Shelby Baptist Health Center from December 22, 2016 through January 23, 2017. (*See* R. 2).

administrative record. *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988). Evidence is material if "there is a reasonable possibility" that it "would change the administrative result." *Washington v. Soc. Sec. Adm.*, 806 F.3d 1317, 1321 (11th Cir. 2015). Evidence is chronically relevant if it "relates to the period on or about the date of the [ALJ's] hearing decision." *Hargress v. Soc. Sec Adm.*, 883 F3d 1302, 1309 (11th Cir. 2018) (citing 20 C.F.R. § 404.970(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision."); 20 C.F.R. § 416.1470(b) (same)). In assessing this matter, the court notes that the AC is not required to give a detailed explanation or to address each piece of new evidence individually. *See Hargress*, 883 F.3d at 1309.

> The ALJ concluded in his October 26, 2016 decision that while West
>
> has alleged disabling pain and limitations, [ ] this allegation is not consistent with her longitudinal treating medical records, which do not indicate any period at 12 continuous months during which the claimant has been unable to perform work consistent with the above stated residual functional capacity.

(R. 33). In reaching this determination, the ALJ reviewed West's records from Dr. Unnoppet for the period from September 10, 2013, through April 28, 2016, and determined that they "do not indicate that he believed [she had] disabling pain or limitations" and "[do] not indicate that her condition

was chronically uncontrolled." (Doc. 12 at 23 (citing R. 34, 685-703, 785-805, 891-922 & 1113-15).

West argues in her opening brief that the new evidence shows that her condition was not controlled as determined by the ALJ. (Doc. 12 at 23-24). The new medical evidence that West references consists of three "flares" she had during a four month period.[19] (*See* Doc. 12 at 23-24). The first is a mid-August 2016 flare-up of her psoriatic arthritis. (R. 171). The medical notes state that West did have a flare, but she otherwise was "very pleased with her treatment" with Cimzia. (*Id.*). Dr. Unnoppet also noted that she has "experienced good resolution of [her] symptoms with [a] Medrol Dosepak in the past." (*Id.*). Accordingly, he prescribed the medicine to "resolve the flare" and wanted to see her again in four months. (*Id.*). However, West returned in October 2016 due to another flare in her right trigger finger. Dr. Unnoppet administered a methylpredisone injection. He also noted her skin was otherwise normal. (R. 175). The third flare was on December 22, 2016, when she returned to Dr. Unnoppet with tenderness in her hands and feet. (R. 46). She had skin eruptions on her finger tips, but Dr. Unnoppet was more concerned with her joint pain. He changed her medications and wanted to "follow her closely" for a month. (*Id.*).

---

[19] West does not cite the court to any other evidence supporting this contention in her initial brief. (*See* Doc. 12 at 21-24).

In January 2017, Dr. Unnoppet's notes reflect that she still had moderate symptoms of psoriatic arthritis and psoriasis on her palm. (R. 52-55). He changed her medication. (R. 52).

This evidence does not show that her condition was uncontrolled. It shows that she had three flare-ups during a four to five month period. It also shows, as best the court can tell, that the flares were effectively treated with medication and/or injections. To the extent West argues that this evidence does not demonstrate "a reasonable probability that her condition was not completely controlled as was determined by the ALJ," the court must disagree with counsel. (Doc. 12 at 24). There are a number of problems with this statement. First, the ALJ did not state that her condition was "completely controlled." (*Id*.). The ALJ said that the evidence did not show (1) any continuous twelve month period during which West was unable to perform work consistent with the RFC, (2) that West had disabling pain or limitations, and (3) that her condition was "*chronically* uncontrolled." (R. 33-34 (emphasis added)). Second, under the circumstances, the AC correctly concluded that there was no reasonable probability this evidence would change the ALJ's decision. While West continued to experience issues with her psoriatic arthritis and psoriasis, this evidence does not undermine the

conclusions reached by the ALJ. This evidence does not refute the functional limitations and abilities determined by the ALJ.[20]

## E. West's Motion to Remand

West also has filed a motion asserting that this case should be remanded for the ALJ to consider further treatment records from Dr. Goyne. (Doc. 18 at 1-3). She includes a list of the records in her motion. (*Id.* at 3-4). After the Commissioner correctly pointed out that some of the records had previously been submitted to the ALJ or the AC, West agreed and listed the records she contends are not cumulative. (Doc. 21 at 2). She argues that these additional records will show to a "reasonable possibility" that she experienced "disabling pain complaints for more than 12 months, including after she had her December 2015 back surgery." (*Id.* at 6). The Commissioner counters that the records "do not contain any objective medical evidence rebutting the ALJ's finding that [West] could perform a reduced range of light work." (Doc. 20 at 7 (citing R. 31)).

---

[20] West also challenges the ALJ's evaluation of Dr. Goyne's records for the period of September 14, 2016, until January 26, 2017, but offers no specific argument in her brief on the merits in support of her claim. (*See* Doc. 12 at 21-24). Subsequent to the filing of West's reply brief, she filed a motion to remand the case premised on various records from Dr. Goyne. (Doc. 18). That motion will be addressed in the next section.

West further argues in her reply brief for the first time that the ALJ and the AC use of the terms moderate and mild differs from Dr. Unnoppet's use of the terms. (Doc. 17 at 9-10). The court is not impressed for two reasons. First, this argument should not have been raised for the first time in a reply brief. *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F. 839, 844 (11th Cir. 2008) (noting that "[w]e decline to address an argument advanced by an appellant for the first time in a reply brief); *United States v. Lewis*, --- F. App'x ---, 2019 WL 994029, n.13 (11th Cir. Feb. 26, 2019) (same). Second, this conclusion is not supported by anything in the record. West offers no specific citation to support this conclusory statement.

Additionally, the Commissioner argues "that the additional records would not undermine the ALJ's statement that '[t]he records of Dr. Goyne . . . do not indicate that [West] has had disabling pain or limitations for any period of 12 continuous months, nor do they indicate that [Plaintiff's] activities have been as limited as [she] has alleged.' ([R]. 35). Rather, the additional records contain evidence further supporting the ALJ's conclusions ([R]. 35)." (Doc. 20 at 7). Finally, the Commissioner argues that West has not demonstrated good cause to submit the evidence at the administrative level. (*Id*. at 9-10).

A court may remand a case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence if certain criteria are met. *See Ingram*, 496 F.3d at 1267-68. To satisfy the criteria for a remand under sentence six, West must establish that: (1) the evidence is new and non-cumulative; (2) the evidence is material such that a reasonable possibility exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985).

The relevant question is whether the additional evidence highlighted by West satisfies the foregoing elements. To fairly address the arguments, the court

believes it is helpful to place all the relevant evidence in context. Accordingly, the court will first summarize that information.[21]

On May 18, 2015, West saw Dr. Goyne for a caudal epidural steroid injection and reported the last block helped her for about six to eight weeks and her headache was improving. Her last injection was three months earlier. (Doc. 18-2 at 170, 172). West also reported that her lumbar spine pain was worsening. (*Id*. at 173). She also stated that her lumbar pain was alleviated by walking, wearing a brace, and using a Tens unit. It, however, was aggravated by standing. (*Id*.). On June 3, 2015, West reported improvement in her right arm numbness but no low back pain improvement after her injection. (*Id*. at 166). Her subjective pain scale score was 7/10. She was not pleased with her level of physical activity, indicating that she wanted to start CrossFit again. (*Id*.). On July 22, 2015, she was referred for electro-physiologic testing to diagnose her lumbar pain and prior to proceeding with another lumbar epidural steroid injection. (*Id*. at 151). On August 27, 2015, she reported that she was "not doing well" and "[s]he is no longer walking for exercise in the morning actually because she is tired due to the medication." (*Id*. at 147). She reported having "frequent or severe headaches." (*Id*. at 148). Dr. Goyne assessed that her "left-sided sciatic is secondary to L5-S1 disc protrusion." (*Id*.).

---

[21] Because West concedes that some of the evidence consists of duplicate medical records, that evidence will not be discussed again in its entirety, except when necessary or appropriate. (*See* Doc. 21 at 1-2).

West had another caudal epidural steroid injection on September 2, 2015. Dr. Goyne's notes reflect that her "pain gradually escalated and is progressively worsened over the last 2 months [following her May 2015 injection], despite poly pharmacy including daily opioid therapy." (*Id*. at 144). Dr. Goyne did note that the May injection lasted longer than prior blocks.  (*Id*.).

Following her back surgery (December 23, 2015), on February 10, 2016, Dr. Goyne noted West was pleased with the "resolution of her back pain," but she was experiencing increased leg pain. Dr. Goyne increased her medications. (*Id*. at 127). Dr. Goyne's April 6, 2016 notes reflect that West "reported she 'gets adequate pain relief . . . from [her] pain medication'" and "she was observed to be ambulating normally and 'wearing heels.'" (*Id*. at 117 18).  However, during the same appointment, Dr. Goyne found her lumbar spine extension decreased and positive straight-leg raising test on the left and hand tenderness and sensations decreased to light touch in her left lower extremity. West also reported having "increased swelling in her hands in the morning." (*Id* at 117-19). By May 23, 2016, West reported that she was very pleased with her surgery and her back was "100% better;" however, she still reported leg and hand pain.  (*Id*. at 100).  Dr. Goyne's physical examination found limited ambulation, antalgic gait, positive right straight leg raising test," FAIR positive right and FABER positive right." (*Id*. at 102).

West had a lumbar transforaminal epidural steroid injection on June 27, 2016. (*Id*. at 70). She returned to Dr. Goyne on July 6, 2016, complaining of significant pain in her legs and feet. (*Id*. at 64). Her previous injection had not helped her. (*Id*.).

On August 2, 2016, West again saw Dr. Goyne. She reported having numbness and tingling in her feet and low back pain. (*Id*. at 42). Dr. Goyne's physical examination found right paravertebral tenderness, right sacroiliac joint tenderness, decreased extension, and positive right straight leg raising. (*Id*. at 43). During this visit, West stated that she was "[t]rying to convince her husband to get a pool, as she knows [she] can tolerate water exercises." (*Id*. at 42).

As to the first consideration, whether the evidence is new and non-cumulative, the court finds as noted previously that some of the evidence is redundant and cumulative, but some of it is relevant and not previously considered. This leads to the next criteria, whether the additional records are material.

The relevant question is whether the additional records show a "reasonable probability" that the evidence would change the administrative result. The court finds that it would not. The additional evidence does not include adequate objective medical finding rebutting the ALJ's determination that West could perform a reduced range of light work. Additionally, the evidence does not demonstrate that West had disabling pain or limitations for a 12 month continuous

period. At best, they contain more of the same varied information that the ALJ already had before him. The undersigned cannot find that this evidence is likely to alter the prior determination.

The final consideration is whether there was good cause for the failure to submit the additional medical evidence at the administrative level. The relevant facts on this issue are as follows. West's previous counsel had requested additional medical records from Dr. Goyne three times. (Doc. 21 at 6). Each time, after additional records were received, counsel submitted portions of them for review by the ALJ. (*Id.* at 6-7). The last submission was on February 7, 2017, eight months before the ALJ's decision on October 26, 2016. However, despite the three submissions, the administrative record did not include her appointments with Dr. Goyne on December 10, 2015, February 10, 2016, April 6, 2016, May 25, 2016, June 27, 2016, July 6, 2016, August 2, 2016, September 27, 2016, and October 19, 2016. (*Id.* at 7).

Following denial of further review by the AC approximately one year later on October 11, 2017, West's present counsel was retained. According to the reply brief on the motion, counsel "assumed the record was complete and contained all of Dr. Goyne's treatment records." (*Id.*). Counsel filed his brief and reply brief on the merits in this case on July 16, 2018, and August 29, 2018, respectively. (Docs. 12 at 1 & 17 at 1). At some unspecified date, he mailed a medical release to West.

She signed the release on July 21, 2018, and returned it by August 20, 2018. (Doc. 18-1 at 3). On August 20, 2018, counsel requested West's medical records from Dr. Goyne for the period from May 1, 2015 to that date. (Doc. 18-1 at 2). Counsel was billed for the records on September 6, 2018. (Doc. 18-1 at 1). Counsel filed his motion to remand on September 14, 2018. (Doc. 18 at 1).

West fails to argue in her initial motion exactly what the good cause is. It is not until the Commissioner challenges that deficiency that she argues that the court should make a finding of good cause premised upon the fact that counsel was retained only after the AC had ruled against her and for the purpose of appealing that decision to federal court. (Doc. 21 at 8). In support of this contention, she relies on *Pruitt v. Astrue*, CV No. 07-0634-M, 2008 WL 801799, *4 (S.D. Ala. Mar. 24, 2008). (Doc. 21 at 8). She also argues that it was the ALJ's specific determination that there was a lack of evidence on her claim that makes this new evidence necessary and appropriate. (*Id.*).

While the court recognizes that counsel is a zealous advocate on behalf of West, it must find under the present circumstances that "good cause" has not been demonstrated. With regard to *Pruitt*, the undersigned declines to follow its lead for a number of reasons. First, no authority is offered in support of the conclusion. The court simply stated:

> Though there is no good explanation as to why Plaintiff's former attorney did not present the evidence . . . , this Court does not wish to

> see the error compounded. Though Defendant has argued that it is inappropriate to bring this evidence in the back door . . . , the Court finds that the ALJ directly put into issue the lack of evidence in this action. The Court notes that had Plaintiff's current attorney represented Plaintiff from the beginning and neglected to present all of the information to the ALJ for his review, this Court would not likely find good cause. However, that is not the case.

2008 WL 801799, *4. Second, this court cannot discern from the record in *Pruitt* when the representation changed and when the records were requested. Here counsel did not request the records until over eight months after the representation commenced and after the initial brief on the merits was filed. Without more, that is insufficient to support a claim of good faith. *See, e,g.*, *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (holding that although the evidence was available during the time of administrative proceeding, the plaintiff was limited in his opportunity to present the evidence due to his hospitalization); *Jennings v. Astrue*, 2010 WL 3418336 (N.D. Ga. Aug. 5, 2013) (finding good cause were new counsel was hampered by Plaintiff's documented homelessness and mental illness); *Mosley v. Astrue*, 2008 WL 3982508 (M.D. Fla. Aug. 25, 2008) (holding that the failure to recognize that two hospitals are separate entities with different addresses does not amount to the good cause required in the Eleventh Circuit); *Digiovanni v. Apfel*, No. 97-245-Civ-FTM-21D, 1999 WL 33601325 (M.D. Fla. Feb. 8, 1999) (finding good cause where new counsel "did immediately obtain the report and did submit

it as soon as it was practicable"). Accordingly, the court finds that West has not met the third prong of the test for consideration at this late juncture.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that West's motion to remand (doc. 18) is due to be denied and the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DATED**, this 29th day of March, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge